IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMANTHA L. LOCKLEAR          :
                              :
          Plaintiff           :
                              :
     v.                       :     CIVIL NO.   4:14-CV-00401
                              :
SUN LIFE ASSURANCE            :          (Judge Brann)
COMPANY OF CANADA             :
                              :
          Defendant           :

## MEMORANDUM
May 1, 2015

Currently pending before this Court are Cross-Motions for Summary Judgment (ECF Nos. 12, 16) and accompanying statements of facts and memoranda.  (ECF Nos. 13, 14, 17, 18).  The matter has been fully briefed and is now ripe for disposition.  For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 12) is granted and Defendant's Motion for Summary Judgment (ECF No. 16) is denied.

## I. BACKGROUND

The facts relevant to this case are entirely undisputed.  On April 9, 2012, De'Marcus Locklear ("Mr. Locklear"), through his employer Calfrac Well Services, elected to obtain Accidental Death Insurance in a total amount of

$71,000.  (AR0004, AR0019).[1]  This insurance policy was provided by Defendant Sun Life Assurance Company of Canada ("Sun Life").  Id.

On August 9, 2012 at approximately 6:00 a.m., Mr. Locklear was traveling southbound on State Highway Route 220/South Eagle Valley Road in Union Township, Centre County, Pennsylvania, on his 2012 Harley Davidson motorcycle. (AR0039-43).  Daylight was present and there was no inclement weather. (AR0043).  This stretch of road was straight with a slight incline.  (AR0032, 0040). In an attempt to pass a construction vehicle, Mr. Locklear, traveling at the stated speed limit of fifty-five miles per hour, (AR0040), moved his motorcycle into the northbound lane near the crest of a slight incline in the road.  (AR0043-44).  At the crest of the incline, Mr. Locklear's motorcycle collided head on with a small pickup truck.  (AR0040-41).  Mr. Locklear did not have time to slow his motorcycle or take any apparent avoidance maneuvers.  (AR0044).  It is undisputed that Mr. Locklear attempted to pass the construction vehicle in a no-passing zone; a No Passing Sign was in place facing southbound approximately 1.5 miles prior to the scene of the accident.  Id.

As a result of the accident, Mr. Locklear suffered "very substantial traumatic injuries involving almost his entire body."  (AR0032).  Skull fractures resulted in

---

[1] Citations to "AR" refer to the administrative record, attached the Ms. Locklear's Motion for Summary Judgment (ECF No. 12) as Exhibit A, and to Sun Life's Statement of Facts (ECF No. 17) as Exhibit A.

"traumatic crush of the brain stem and focally of cerebrum." Id.  At the age of twenty-five, Mr. Locklear had died of a motorcycle accident resulting in brain stem and cerebral trauma.  (AR0003).  An autopsy revealed that no alcohol or drugs were present in Mr. Locklear's system.  (AR0031).  The driver of the pickup truck suffered only minor injuries.  (AR0042).

On September 11, 2012, Samantha L. Locklear ("Ms. Locklear") filed a claim for benefits as the beneficiary of Mr. Locklear's insurance policy.  (AR0009, AR0027).  Sun Life paid out the policy amount for Mr. Locklear's basic insurance on April 29, 2013, but requested additional information to determine the claim for Accidental Death Insurance.  (AR0026). After receiving additional information, on August 15, 2013, Sun Life denied benefits under Mr. Locklear's Accidental Death Insurance.  (AR0051).  These benefits were denied because, *inter alia*, Sun Life determined that Mr. Locklear's death occurred during the commission of a crime. [2] (AR0053).  Specifically, Sun Life believed that violations of Pennsylvania Vehicle Code, 75 Pa.C.S. §§ 3301, 3714, and 3736 were properly classified as crimes.  Id.

Ms. Locklear appealed this determination, and her appeal was denied based solely on the "criminal act" exclusion of Mr. Locklear's policy.  (AR0064-0067). After exhausting her administrative appeals, (ECF No. 17, ¶ 21), on March 4,

---

[2] Mr. Locklear's policy with Sun Life included an exclusion of benefits for any death that occurred "due to or result[ing] from [an insured individual] . . . committing or attempting to commit an assault, felony or other criminal act."  (AR0053).

2014, Ms. Locklear filed a Complaint with this Court under the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. § 1132(a)(1)(B).  (ECF No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."  Id.

The burden of establishing the nonexistence of a "genuine issue" rests on the party moving for summary judgment.  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); see also Anderson, 477 U.S. at 248–50.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Although the Court may consider any materials in the record, it need only consider those materials cited. Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

As a preliminary matter, both parties agree to the central facts underlying the cross-motions for summary judgment. See (ECF Nos. 13, 17, 19, 21). The only true dispute is whether Mr. Locklear's actions on the day of his death may be properly classified as criminal.

In an ERISA challenge brought under 29 U.S.C. § 1132(a)(1)(B), the court reviews the denial of benefits under a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "If the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination." Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1185 (3d Cir. 1991) (citing McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 431 (6th Cir. 1989)). Under an ERISA benefits plan, the plan administrator bears the burden of proving that an exclusion to the policy precludes coverage. See, e.g., McCartha v. Nat'l City Corp., 419 F.3d 437, 443 (6th Cir. 2005); Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 257 (2d Cir. 2004). Here, it is undisputed that the administrator's decision is subject to *de novo* review, and no further development of the record is required. (ECF Nos. 14, 18).

Sun Life raises two arguments as to why denial of benefits under the "criminal act" exception of the policy is appropriate. (ECF No. 23). First, Sun Life argues that violations of 75 Pa.C.S.A. §§ 3303, 3305, 3714, and 3736 constitute crimes in Pennsylvania. Id. Ms. Locklear argues that such acts are not

crimes.  (ECF No. 25).  Second, Sun Life argues, for the first time in its brief in

opposition to Ms. Locklear's Motion for Summary Judgment, that Mr. Locklear's

actions were in violation of 18 Pa.C.S.A. § 2705.  (ECF No. 23).  Ms. Locklear

asserts that (1) this argument should not be considered by the Court and (2) in any

event, Sun Life cannot establish the necessary *mens rea* for this crime.  (ECF No.

25).

### A.   Vehicle Code Violations

Pennsylvania law states that "[a]n offense defined by [Title 18] for which a

sentence of death or of imprisonment is authorized constitutes a crime."  18

Pa.C.S. § 106(a).  Pursuant to a plain reading of the statute, Pennsylvania courts

have repeatedly emphasized that, to constitute a crime in Pennsylvania, an offense

must carry the possibility of imprisonment or death.  See, e.g., Commonwealth v.

Matty, 619 A.2d 1383, 1386 (Pa. Super 1993); Lewis v. Commonwealth, 459 A.2d

1339, 1341 (Pa. Commw. Ct. 1983); In Interest of Golden, 365 A.2d 157, 158-59

(Pa. Super 1976).  Thus, the Supreme Court of Pennsylvania has stated that "all

true crimes [are defined as] an offense [that] carries with it a jail sentence[.]"

Commonwealth v. Field, 490 Pa. 519, 524 (1980) (quoting Commonwealth v.

Koczwara, 397 Pa. 575, 585-86 (1959)).  Under Pennsylvania's Crimes Code, a

summary offense is punishable by a term of imprisonment not to exceed ninety

days.  18 Pa.C.S. § 1105.

Offenses for motor vehicle violations are not contained in the Pennsylvania Crimes Code, but are instead contained within the Pennsylvania Vehicle Code. See 75 Pa.C.S. § 101, *et. seq.*  Under the Vehicle Code, any violation is considered a summary offense unless otherwise defined.  75 Pa.C.S. § 6502(a).  However, summary offenses under the Vehicle Code are punishable by a maximum twenty-five dollar fine unless another penalty is provided for.  Id.  Importantly, the Pennsylvania General Assembly specifically excluded from any violation under the Vehicle Code "Title 18 (relating to crimes and offenses), insofar as it relates to fines and imprisonment for convictions for summary offenses[.]"  75 Pa.C.S. § 6502(c).

Under this relatively straight-forward definition of a crime under Title 18, none of Mr. Locklear's Vehicle Code violations constitute a crime.[3]  While all Vehicle Code violations constitute a summary offense, none of Mr. Locklear's violations would result in imprisonment.  The Vehicle Code at 75 Pa.C.S. § 3301 does not provide for any penalty, and therefore a violation is punishable only by a fine of twenty-five dollars.[4]  See 75 Pa.C.S. § 6502(a).  A careless driving violation similarly results in a twenty-five dollar fine, unless the violation results in "serious

---

[3] The Court assumes, *arguendo*, that Mr. Locklear committed each alleged Vehicle Code violation.

[4] Sun Life also argues in its brief that Mr. Locklear violated 75 Pa.C.S. §§ 3303, 3305, 3307. (ECF No. 18).  As discussed *infra*, the Court declines to consider these arguments.  However, none of these provisions provide for punishment beyond the maximum twenty-five dollar fine mandated by Section 6502.

bodily injury" or "unintentional death" in which case elevated fines are mandated. 75 Pa.C.S. § 3714.  Punishment by imprisonment is not provided for.  Id.  Reckless driving is punishable by a mandatory two hundred dollar fine, but no term of imprisonment is provided for.  75 Pa.C.S. § 3736.

None of the violations allegedly committed by Mr. Locklear could possibly result in imprisonment.  As previously noted, Pennsylvania law specifically excludes the application of Title 18 punishments to Vehicle Code violations; therefore, imprisonment for a Vehicle Code violation may only occur where the Title 75 provision itself provides for a term of imprisonment.[5]  Absent a possibility of imprisonment or death, Mr. Locklear's traffic violations do not constitute crimes under Pennsylvania law.[6]  See, Slusar v. Sestili, No. 2:11-cv-1311, 2013 WL 5774019, at *3 (W.D. Pa. Oct. 24, 2013) (concluding that, under Pennsylvania law, "a traffic violation punishable by a $200 fine is not a 'crime'").

---

[5] For example, 75 Pa.C.S. § 3732(b), covering homicide by vehicle, provides for a maximum five year sentence of imprisonment.

[6] Sun Life cites to Black's Law Dictionary for the proposition that, under a plain meaning of the word "offense," summary traffic offenses constitute crimes.  See (ECF No. 23).  While this may be true as a general statement, the Pennsylvania "legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes." Commonwealth v. Church, 513 Pa. 534, 544 (1987).  The Pennsylvania legislature plainly intended to exclude any offenses that do not carry the possibility of imprisonment from its definition of a crime, and its exclusive authority is binding in that respect.  See, In the Interest of Golden, 365 A.3d at 158 ("The definition of a crime is embodied in the Crimes Code itself. The Code expressly tells that that: 'An offense defined by this title for which a sentence of death or of Imprisonment is authorized constitutes a crime'").

The cases relied upon by Sun Life for the proposition that the traffic violations at issue here constitute crimes are inapposite. Sun Life primarily relies upon <u>Commonwealth v. Genovese</u>, 675 A.2d 331 (Pa. Super. 1996). There, the Pennsylvania Superior Court concluded that restitution was appropriate for a traffic offense, despite the fact that the Vehicle Code did not provide for restitution. <u>Id.</u> at 333. The Court noted that all traffic violations were summary offenses, and all summary offenses are punishable by a magisterial district judge. <u>Id.</u> Under the narrow definition of a crime employed by Title 18's restitution section, a crime is defined as "[a]ny offense punishable . . . by a magisterial district judge." 18 Pa.C.S. § 1106(h). Thus, under this narrow definition, employed only by the restitution section of Title 18, a traffic violation is a crime for which restitution is appropriate. <u>Id.</u>

Furthermore, the <u>Genovese</u> Court concluded that restitution is not penal in nature, <u>id.</u> at 333-34; it reasoned that the provisions of 75 Pa.C.S. § 6502(c), which prohibits the application of fines and imprisonment provided by Title 18 to the Vehicle Code, did not operate to prevent the imposition of restitution. <u>Id.</u> The Superior Court's holding did not alter the broad definition of a crime in Pennsylvania. First, the court in <u>Genovese</u> was relying on the narrow definition of a crime used in a specific section of Title 18, rather than the general definition of a crime used elsewhere in Title 18. <u>See</u> 18 Pa.C.S. § 1106(h) ("As used <u>in this</u>

10

<u>section</u>, the following words and phrases shall have the meanings given to them in this subsection") (emphasis added).  Second, the court noted that Title 18 provisions relating to imprisonment were specifically excluded from application to Title 75 offenses.  <u>Genovese</u>, 675 A.2d at 333.  Thus, this case does nothing to change the analysis of a crime under the definition provided in 18 Pa.C.S. § 106(a).

The remaining cases relied upon by Sun Life all involved an analysis of Title 18 summary offenses, rather than summary offenses under Title 75.  <u>See</u>, <u>Lewis</u>, 459 A.2d at 1341; <u>In the Interest of Golden</u>, 365 A.2d at 158; <u>Matty</u>, 619 A.2d at 1385-86.  As these cases all involved summary offenses under Title 18, terms of imprisonment were authorized and they could properly be classified as crimes.  In the matter at hand, however, none of the offenses Mr. Locklear committed are punishable by imprisonment; therefore, the offenses do not constitute crimes, and the administrator's decision to the contrary was erroneous.

### B.    Reckless Endangerment

Turning next to Sun Life's allegation that Mr. Locklear's actions constituted reckless endangerment, the Court is presented with two significant issues.  First, when conducting *de novo* review, may the Court address arguments that were not raised at the administrative level?  Second, did Mr. Locklear's actions constitute reckless endangerment?  These issues will be addressed in turn.

### 1.    <u>Issues Not Raised at the Administrative Level</u>

ERISA mandates that every benefit plan shall "provide adequate notice in writing" to a participant who is denied benefits under a plan, and must set "forth the specific reasons for such denial" so as to "afford a reasonable opportunity . . . for a full and fair review" by the plan administrators.  29 U.S.C. § 1133.  As the United States Court of Appeals for Third Circuit has noted, "[o]ne of the main purposes for the requirement that the denial letter provide specific reasons is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.'"  Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 178 n. 8 (3d Cir. 2001) (internal quotations omitted) *abrogated on other grounds by* Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)).

Consequently, in the context of an ERISA claim governed by deferential review standards rather than *de novo* review, the Third Circuit observed in an unpublished opinion that "[t]o enable plan participants to contest denials of their claims, and to enable effective judicial review of the plan administrators' determinations, 'a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not . . . consider *post hoc* rationales.'"  Pacconi v. Trustees of the United Mine Workers of Am., 264 F.App'x 216, 217 (3d Cir. 2008) (quoting Flinders v. Workforce Stabilization Plan, 491 F.3d 1180, 1190 (10th Cir. 2007)).  However, whether *post hoc* rationales may be

12

considered in a *de novo* review remains an open question within the Third Circuit, although most district courts have held that *post hoc* arguments may not be considered.[7]  See, Nair v. Pfizer, Inc., Civ.A. No. 07-5203, 2009 WL 1635380, at *10 (D.N.J. June 10, 2009) (collecting cases).

Other circuit courts have concluded that, ordinarily, *post hoc* rationales provided for the purposes of litigation should not be considered when conducting a *de novo* review.  For example, the United States Court of Appeals for the Eighth Circuit has held that a court "may not . . . consider *post hoc* rationales . . . even in the case of *de novo* review unless there is good cause to depart from the general rule[.]"  Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999) (citations omitted).  Similarly, the United States Court of Appeals for the Second Circuit has held that, in certain circumstances, an insurer may waive defenses by failing to raise them at the administrative level.  Lauder v. First Unum Life Ins. Co., 284 F.3d 375, 381 (2d Cir. 2002) (citing Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279 (2d Cir. 2000)).  See also Glista v. Unum Life Ins. Co. of Am., 378 F.3d

---

[7] In Gritzer v. CBS, Inc., the Third Circuit did state that non-action from a plan administrator constituted a denial with reason under ERISA.  275 F.3d 291, 295-96 (3d Cir. 2002).  The Court concluded that in such circumstances, the rationales provided during litigation should be reviewed under the *de novo* standard.  Id.  However, this case does not answer the relevant question for two reasons.  First, the Court was specifically addressing the correct standard of review, and did not address the propriety of addressing *post hoc* rationales in such circumstances.  Id.  Second, the Court did not answer the question of whether and in what circumstances a court may consider *post hoc* rationales when conducting a *de novo* review of a plan administrator's decision.  Id.  Specifically, as discussed *infra*, many circuits have concluded that, where a plan administrator has offered other defenses to coverage, they may be precluded from offering *post hoc* argument during litigation.  This exception would make Gritzer distinguishable.

13

113, 131-32 (1st Cir. 2004); Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991).

The prudent rule seems to be that employed by the Second and Eighth Circuits: where the insurer possessed sufficient knowledge and information regarding an argument and failed to later present it at the administrative level, the insurer should not be able to later present that argument during litigation. Lauder, 284 F.3d at 382; Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992). To permit otherwise would

> raise concerns that plan administrators . . . will try the easiest and least expensive means of denying a claim while holding in reserve another, perhaps stronger, defense should the first one fail. In light of ERISA's remedial purpose of protecting plan beneficiaries, we are unwilling to endorse manipulative strategies that attempt to take advantage of the beneficiaries in this manner.

Lauder, 284 F.3d at 382. Allowing the introduction of *post hoc* justifications would ultimately discourage the "meaningful dialogue" between plan administrators and their beneficiaries as ERISA intended, Abram v. Cargill, Inc., 395 F.3d 882, 886 (8th Cir. 2005), "invite more terse and conclusory decisions from plan administrators," Skretvedt, 268 F.3d at 178 n. 8, and allow insurers to "sand-bag" the most vulnerable party in the proceedings – the beneficiary.

Applying this standard to the case at bar, Sun Life may not provide *post hoc* rationales for its denial of benefits. The factual record was entirely developed at the administrative level, and neither party has referenced any facts beyond the

administrative record.  Mr. Locklear's conduct was well-known to Sun Life, and is entirely undisputed.  Ms. Locklear provided all of the information requested by Sun Life, and Sun Life deemed this information sufficient to deny benefits.  Sun Life possessed adequate facts to deny benefits on the ground that Mr. Locklear's conduct constituted reckless endangerment, but opted instead to pursue the easier argument that his undisputed traffic violations were criminal in nature.  Given these facts, it is not appropriate to allow Sun Life to assert *post hoc* rationales in defense of its decision.  However, even if the Court were to consider this argument, it is apparent that a denial of benefits would not be appropriate.

### 2.    Reckless Endangerment *Mens Rea* Requirement

Under 18 Pa.C.S. § 2705 "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  "[T]he *mens rea* required for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person."  Commonwealth v. Cottam, 616 A.2d 988, 1004 (Pa. Super. 1992).  The *mens rea* requirement for recklessly endangering another person is synonymous with the *mens rea* required for reckless driving.  Commonwealth v. Bullick, 830 A.2d 998, 1002 (Pa. Super. 2003).

In Commonwealth v. Mastromatteo, the defendant appealed a conviction for reckless endangerment based upon his driving while intoxicated.  719 A.2d 1081

15

(Pa. Super. 1998).  There, the Pennsylvania Superior Court held that "driving

under the influence of intoxicating substances does not create legal recklessness

*per se* but must be accompanied with other tangible indicia of unsafe driving to a

degree that creates a substantial risk of injury which is consciously disregarded."

Id. at 1083.  In reaching this conclusion, the Court reasoned that

> no statistical evidence has been proffered to support the conclusion
> that driving under the influence alone creates the degree of risk legally
> necessary to convict for reckless endangerment . . . in order for us to
> conclude that driving while legally intoxicated results in recklessness
> *per se* we would have to conclude that driving while legally
> intoxicated creates a "substantial" risk that death or serious bodily
> injury will occur. However, this does not necessarily follow.

Id. at 1083-84.

Given that driving while intoxicated does not constitute recklessness *per se*,

it follows that passing a vehicle in a no-passing zone cannot constitute recklessness

*per se*.  After all, driving while intoxicated is perhaps the most dangerous and ill-

advised activity one can undertake in a motor vehicle.  As the Supreme Court of

Pennsylvania noted "[d]runk drivers are brainless lethal weapons . . . [such]

conduct places the drunken driver, himself or herself, [as well as innocent people]

in a position of extreme peril[.]"  Commonwealth v. O'Hanlon, 539 Pa. 478, 484-

85 (1995) (Papadakos, J., dissenting).  This Court concludes that, similar to drunk

driving, passing a vehicle in a no-passing zone requires some other "tangible

indicia of unsafe driving" to satisfy the *mens rea* required for recklessness.

<u>Mastromatteo</u>, 719 A.2d at 1083.

Here, Sun Life has failed to establish the presence of "tangible indicia" which Pennsylvania courts typically look to. Mr. Locklear was not speeding, which is one typical tangible indicia of unsafe driving that is considered in determining a reckless *mens rea*. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Schmohl</u>, 975 A.2d 1144, 1148-49 (Pa. Super 2009). The evidence does not establish that Mr. Locklear definitively knew of the danger or harm that was likely to result from his actions. <u>See</u>, <u>Commonwealth v. Scofield</u>, 521 A.2d 40 (Pa. Super. 1987); <u>Commonwealth v. Wood</u>, 475 A.2d 834 (Pa. Super 1984). The evidence further does not establish a prolonged pattern of dangerous behavior prior to the accident. <u>See</u>, <u>Commonwealth v. Jeter</u>, 937 A.2d 466, 468-69 (Pa. Super 2007); <u>Commonwealth v. Breighner</u>, 684 A.2d 143, 144-45 (Pa. Super. 1996).

This is not to say that Mr. Locklear's decision to pass a construction vehicle on a hill – when he presumably was not able to view vehicles coming from the opposite direction – was condonable behavior. Certainly in this instance, that decision led to tragic results for Mr. Locklear. In that sense, actions could properly be described as a "careless disregard" for his safety and the safety of others. 75 Pa.C.S. § 3714. It is notable that the police report drafted for this accident described Mr. Locklear's conduct as "careless" rather than reckless. (AR0039).

It should again be emphasized that it is Sun Life's burden to demonstrate that Mr. Locklear possessed the *mens rea* necessary to commit reckless endangerment of another person and therefore be excluded from coverage. McCartha, 419 F.3d at 443; Critchlow, 378 F.3d at 257.  Sun Life has failed to carry that burden.  For that reason, even considering Sun Life's argument that recklessly endangering another person qualified for exclusion under Mr. Locklear's policy, the Court concludes that Mr. Locklear did not recklessly endanger another person, and therefore cannot be excluded from payout under the policy.

## C.    Damages Award

Although summary judgment will be entered in Ms. Locklear's favor, further briefing is required before an award can be entered in her favor.  Ms. Locklear has requested "damages including, but not limited to, past due benefits, interest, attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), costs incurred in bring[ing] this action, and for such other relief as the Court deems equitable, just and proper."  (ECF No. 1).  Neither party has briefed this issue.

Specifically, before entering any award, the Court requires a list of any costs incurred by the plaintiff, as well as a detailed breakdown of all hours expended by counsel for the Plaintiff.  The hours expended should be detailed with sufficient specificity to allow the Court to reach a determination as to whether any time was

duplicative, unreasonable, or otherwise unnecessary.  Additionally, both parties will need to brief the issue of the proper monetary award under the policy, as well as any interest due on that award.  Such briefing is necessary due to the possible uncertainty as to the amount owed under Mr. Locklear's policy.  See (AR0024).

## IV. CONCLUSION

A review of the record demonstrates that Mr. Locklear was not committing a crime at the time of his death.  Consequently, no exclusion applies and the plan administrator erred in denying benefits to Ms. Locklear.  For those reasons, Sun Life's Motion for Summary Judgment is denied and Ms. Locklear's Motion for Summary Judgment is granted.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge